FILED
 2011 Dec-28  AM 09:00
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **VIVIAN JOHNSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **4:10-cv-2433-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Vivian Johnson ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Plaintiff filed her application for Title XVI Supplemental Security Insurance ("SSI") on April 10, 2007, alleging a disability onset date of October 10, 2006,

from "pain in back and joints, numbness in both legs, sharp pain, can't stand or sit for long periods of time, can't lift or bend." (R. 79, 86). On July 20, 2007, six days after the denial of her application, (R. 64, 70), Plaintiff requested a hearing before the ALJ, which occurred two years later, on July 20, 2009. (R. 44-62). At the time of the hearing, Plaintiff was 39 years old with a high school diploma and a cosmetology certification. (R. 48, 51, 52). Plaintiff has not engaged in substantial gainful activity since April 2007. (R. 53). Her past relevant work included medium and semi-skilled work as a convenience store manager, light and semi-skilled work as a server, medium and low-skilled work as a warehouse shipping and receiving clerk, medium and unskilled work as a food delivery driver, and sedentary and semi-skilled work as a general office clerk. (R. 57).

On August 14, 2009, the ALJ denied Plaintiff's claims, (R. 10-21), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-4). Plaintiff then filed this action for judicial review pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV.  The ALJ's Decision

As a threshold matter, the court notes that the ALJ properly applied the five step analysis. Initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 10, 2007, and therefore met Step One. (R. 15). The ALJ acknowledged that Plaintiff's combination of severe impairments of lumbar degenerative disc disease, obesity, and depression met Step Two. *Id*. The ALJ proceeded to the next step and found that Plaintiff did not satisfy Step Three

since her impairments or combination of impairments neither met nor equaled the requirements for any listed impairment. *Id*. Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Plaintiff had the residual functional capacity ("RFC") to

> lift objects weighing up to 20 pounds, to sit for up to 6 out of 8 hours per day, and to stand and walk for up to 6 out of 8 hours per day. [Plaintiff] also requires a sit/stand option and is precluded from exposure to continuous vibrations and from work around unprotected heights. Furthermore, she requires a job with non-complex tasks not requiring the satisfaction of production quotas and a job that deals primarily with objects and not people.

(R. 16). Further, the ALJ held that Plaintiff could not perform any of her past relevant work. (R. 20). Lastly, in Step Five, the ALJ considered Plaintiff's age, education, work experience, RFC, and impairments, and determined that there are a significant number of jobs in the national economy that Plaintiff can perform. *Id*. Because the ALJ answered Step Five in the negative, the ALJ determined that Plaintiff is not disabled. (R. 21); *see also McDaniel*, 800 F.2d at 1030. As it relates to the pain standard, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (R. 17).

## V. Analysis

The court turns now to Plaintiff's contentions of error, which are related solely to the ALJ's application of the pain standard. Plaintiff contends that the ALJ improperly applied the pain standard because he "failed to properly evaluate the credibility of Plaintiff's complaints of pain." Doc. 9 at 4. Specifically, Plaintiff contends that the ALJ erred when he (1) relied on evidence that "predates [Plaintiff's] application date of April 10, 2007," doc. 9 at 7, (2) "failed to properly credit the subsequent medical evidence which documents [ ] Plaintiff's continued complaints of and treatment for severe back pain," *id*., and (3) improperly relied on Plaintiff's Physical Activities Questionnaire to determine that Plaintiff's complaints of pain are not credible, *id*. at 8. The court has reviewed the entire record and Plaintiff's contentions and finds no error. For the reasons discussed below, the court finds that Plaintiff did not meet the pain standard and that the ALJ's decision is supported by substantial evidence.

A.   *The ALJ considered the entire record and did not unreasonably rely on Plaintiff's 2006 medical records.*

Plaintiff contends first that the ALJ erred by relying on evidence that "predates [Plaintiff's] application date of April 10, 2007." Doc. 9 at 7. In particular, Plaintiff takes issue with the ALJ's reference in his opinion to Plaintiff's early 2006 medical records, doc. 9 at 6-7, especially the May 25, 2006,

Work Status Form opining that Plaintiff is able to work, (R. 251). Basically, Plaintiff objects to the consideration of this evidence because it is adverse to her and, instead, wants the ALJ to only consider favorable medical information from 2006. This contention has no support in the law because "[i]n evaluating the intensity and persistence of [Plaintiff's] symptoms, including pain," the ALJ considers "all of the available evidence, including your medical history, the medical signs and laboratory findings and statements." 20 C.F.R. § 416.929(a) (emphasis added). Therefore, the ALJ is required to review the entire record, including medical evidence unfavorable to Plaintiff.

Moreover, the ALJ did not unreasonably rely on only the negative 2006 medical records or "failed to properly credit the subsequent [favorable] medical evidence" as Plaintiff contends. In fact, the ALJ considered all the medical information. Indeed, the ALJ began his analysis with Plaintiff's October 24, 2005, emergency room visit after falling at work. (R. 222). As the ALJ notes, the x-ray of Plaintiff's spine was normal, (R. 220), and the emergency room physician discharged Plaintiff with instructions for "light duty next 2 days," (R. 226). Next, the ALJ notes that on April 4, 2006, Plaintiff received a MRI of the lumbar spine that revealed "subligamental herniation L5" and "mild to moderate central spinal canal and bilateral lateral recess stenosis L3 and L4 interspaces secondary to disc

bulging and early osteoprolific disease." (R. 17, 130).  The ALJ then noted that a month later, on May 25, 2006, a physician at Southern Orthopaedic Specialists completed the Work Status Form and opined that Plaintiff was able to work but was restricted to "limited lifting, carrying, pushing or pulling to 30 pounds." (R. 17, 251).  Also, as it relates to 2006, the ALJ noted that on October 16, 2006, Plaintiff again received an MRI of the lumbar spine and that it revealed essentially the same diagnosis, except for "<u>significant</u> degenerative disc disease L4 and L5 interspaces with at least partial collapse of the L5." (R. 17, 134) (emphasis added).

     Although Plaintiff is correct that the ALJ included the 2006 information in his opinion, it is inaccurate, however, to say that the ALJ improperly relied on this information or gave "significant weight" to the adverse May 2006 Work Status opinion.  In fact, the ALJ did not assign <u>any</u> weight to the 2006 medical opinions or objective medical evidence and, instead, simply summarized the Work Status opinion Plaintiff challenges: "By May 2006, treatment notes from Southern Orthopaedic Specialists indicated some relief from an epidural with a referral to a spine surgeon and that [Plaintiff] was able to work with a lifting, carrying, pushing, and pulling limitation of 30 pounds." (R. 17).  The ALJ did nothing else as it relates to the Work Status opinion, and, in fact, there is nothing in the ALJ's

opinion suggesting that he gave greater weight to this evidence. *See* R. 17.

Critically, the ALJ is not required to review the medical evidence in isolated or piecemeal fashion, nor is the ALJ required to disregard evidence that is unfavorable to Plaintiff. Rather, the ALJ must evaluate the entire record. *See* 20 C.F.R. § 416.929(a). In that regard, as Plaintiff correctly points out, the April 2006 to October 2006 MRIs demonstrate that her condition deteriorated. Significantly, the ALJ acknowledged this fact: "It is true that MRIs of the lower back from April 2006 and October 2006 revealed stenosis at L3 and L4 and degenerative disc disease." (R. 17). However, the change in Plaintiff's condition between the July 2006 and October 2006 MRIs does not, as Plaintiff suggest, call into question the "validity" of the May 2006 Work Status evaluation, the April 2006 MRI, or the ALJ's findings. After all, medical conditions and diagnoses are not stagnant; rather, they change based on a wide array of factors, which the ALJ must assess in reaching a determination. In other words, that Plaintiff's condition declined later in 2006 is not determinative on the overall assessment of whether Plaintiff is disabled. Stated differently, that change alone is not automatic proof that the ALJ's decision to review the entire record and evaluate Plaintiff's disability based on the totality of the record, rather than just focusing on the latter 2006 information favorable to Plaintiff, is not supported by substantial evidence.

Likewise, Plaintiff's challenge of the ALJ's review of Plaintiff's July 5, 2006, Functional Capacity Evaluation performed by occupational therapist R.J. Vigelis ("Vigelis"), (R. 17-18, 155), misses the mark. Vigelis' evaluation, which included musculoskeletal screening, endurance/aerobic capacity evaluation, dynamic lift testing, and positional tolerance testing, noted that Plaintiff "is functionally capable of performing work in the Medium physical demand category [ ] on an 8 hour per day basis, as evidence by safe occasional maximum lift of 25lbs." (R. 155-62). Regarding this evaluation, the ALJ noted that Vigelis

> performed an over three-hour evaluation of [Plaintiff], and I find the opinion <u>partially persuasive</u> as 'other source' opinion under the criteria set forth in SSR 06-03p. The evaluation is relevant even in light of additional evidence subsequent to the evaluation that is discussed below.

(R. 17-18) (emphasis added).

It is this decision to find Vigelis' opinion "partially persuasive" and "relevant even in light of [subsequent] additional evidence" that forms Plaintiff's contention that the ALJ committed reversible error. This contention is unfounded, however, because it is clear from the ALJ's opinion that he did not assign Vigelis' opinion any improper weight. Instead, he considered it only "partially persuasive" and relevant in light of the record as a whole, including the "additional [favorable] evidence subsequent to the evaluation" that he discussed next in his opinion. The

subsequent discussion the ALJ references establishes that the ALJ considered all the medical evidence, including Vigelis' opinion, and that he did not assign Vigelis' opinion any improper weight.  *See* R. 17-18.

Based on this court's review of the record, te ALJ placed no greater significance to Plaintiff's 2006 medical records than on Plaintiff's other medical records.  Rather, the ALJ evaluated all of Plaintiff's medical records, as the regulations require, to ensure that he reached a decision based on the totality of the record.  Therefore, Plaintiff's contention that the ALJ improperly relied on evidence that predated Plaintiff's application for disability is without merit.

B.	*The ALJ properly credited subsequent medical evidence from 2007-2009.*

Plaintiff contends next that the ALJ erred because he failed to "properly credit the subsequent medical evidence which documents [Plaintiff's] continued complaints of and treatment for severe back pain."  Doc. 9 at 7.  To support her contention, Plaintiff cites medical records documenting her repeated complaints of back and leg pain from 2006 through 2009, and states that there is "no indication that [Plaintiff's] treating physicians did not believe she suffered from severe pain" and that her physicians "prescribed medication to help her pain."  Doc. 9 at 7.  This argument also lacks merit for several reasons.  First, subjective complaints of pain alone are insufficient to prove disability.  *See* 20 C.F.R. § 416.929(a); *see*

*also Holt*, 921 F.2d at 1223.  Indeed, the pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  *Id*.

A review of the objective medical evidence in Plaintiff's medical file reveals that Plaintiff does not meet the pain standard because her underlying condition is not so severe that it can be reasonably expected to produce the alleged pain. Specifically, on June 5, 2006, Plaintiff received a lumbar myelogram, (R. 151), and CT scan of the lumbar spine, (R. 152), both of which "did not reveal any abnormalities," (R. 166).  Later that same year, on October 16, 2006, Plaintiff's MRI showed "significant degenerative disc disease" and "mild" stenosis.  (R. 134.)  The next objective medical evidence in the file is three years later, on March 9, 2009, when Plaintiff received a x-ray of the lumbar spine after a motor vehicle accident.  The x-ray showed "moderate disc space narrowing at L5/S1.  No acute traumatic abnormality of the lumbar spine.  Minimal anterior wedging of the T12 vertebral body.  This is age indeterminate, and clinical correlation with tenderness in this area is advised." (R. 305).  Three days later, on March 12, 2009, Plaintiff's x-ray report of her lumbosacral spine noted "mild degenerative changes lower

thoracic and lumbar spine and osteopenia" and "mild compression deformity T12." (R. 292). Finally, on April 16, 2009, Plaintiff received an MRI of the lumbosacral spine that revealed "small posterior central L5-S1 disc protrusion. L4-5 mild disc bulging. Mild [degenerative disc disease]." (R. 290).

Based on this court's review of the record, the objective medical evidence shows primarily "mild" impairments and no existence of an underlying medical condition that the ALJ could reasonably expect to produce disabling pain. *Holt*, 921 F.2d at 1223. These objective tests are inconsistent with Plaintiff's allegations of disabling pain. Therefore, the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible," (R. 17), is supported by substantial evidence.

Second, Plaintiff's contention that the ALJ failed to credit Plaintiff's treatment for back pain is also unpersuasive because, although Plaintiff is correct that her physicians prescribed her narcotic pain relievers, her physicians also released her to return to work without any restrictions. Specifically, on January 24, 2007, after Dr. Michelle Turnley ("Dr. Turnley") evaluated Plaintiff and administered a steroid injection, Dr. Turnley noted that Plaintiff's "functional capacity evaluation has been signed off on to do medium work with 0% impairment." (R. 144). Two years later, on February 19, 2009, after an evaluation

at DeKalb Medical at Hillandale for "headache, pain to back/neck" from a motor vehicle accident, Plaintiff was discharged to return to work without any restrictions. (R. 349). Moreover, Dr. C.V. Clopton, Jr., who saw Plaintiff several times in 2009 to evaluate her foot pain, (R. 314, 322-327), also released Plaintiff to return to work without any restrictions. (R. 317). Furthermore, Plaintiff was seen intermittently at First Lithonia Medical Center from February 26, 2009, through April 29, 2009, complaining of lower back pain, (R. 300), and on March 18, 2009, Dr. Isioma Okobah also completed a certificate for Plaintiff to return to work without any restrictions. (R. 299). These full releases belie Plaintiff's contention that she suffers from disabling pain. Therefore, the ALJ's decision is supported by substantial evidence.

C.   *The ALJ did not err in his assessment of Plaintiff's daily activities.*

Lastly, Plaintiff contends that the ALJ erred by improperly relying on Plaintiff's Physical Activities Questionnaire to discredit Plaintiff's pain testimony and find that Plaintiff had a "fairly good capability to perform daily activities." Doc. 9 at 8; (R. 19). This contention also lacks merit. In an undated Physical Activities Questionnaire, (R. 108-113), in response to the question, "Describe your usual daily activities, commenting on things such as household chores, shopping, errands, walking, driving, yard work, hobbies, doing small repairs, etc.," Plaintiff

responded that her daily routine includes "household chores, [ ] making beds, washing dishes, cooking breakfast and dinner, fixing lunch for my 2 yr old and trying to keep up with him. Run errands, grocery shopping, vacumming [sic], horseback riding, traveling, taking baths." (R. 108). Plaintiff stated further that sometimes the pain in her back prevents her from preparing meals, (R. 110), that she has to hold on to something to get in and out of the shower, (R. 109), and that she holds on to the counter when moving around the kitchen. (R. 110). Plaintiff also stated that she "can't lift anything over 15lbs continuously." (R. 108). Regarding changes in her activities, Plaintiff stated that she cannot "tote as many bags as before," (R. 111), and that the amount of bags she can carry depends on their weight, (R. 112).

  Plaintiff's ability to engage in daily activities supports the ALJ's finding that Plaintiff's pain is not disabling. Indeed, on March 12, 2009, Dr. Okobah noted that Plaintiff "reports improvement with symptoms," that she has received "some pain relief with [non-steroidal anti-inflammatory drugs], muscle relaxants, and narcotic pain medication," and that she walks for exercise one day per week. (R. 300-301). Unfortunately for Plaintiff, although it is clear that she suffers from some pain, her description of her daily activities undermines her contention that her pain significantly limits her ability to perform light work. Therefore, the court

finds that the ALJ's finding that Plaintiff does not meet the pain standard is supported by substantial evidence.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  The final decision of the Commissioner is, therefore, **AFFIRMED**.  A separate order in accordance with this memorandum of decision will be entered.

Done the 27th day of December, 2011.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE